UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00053

CHRISTOPHER S. KELTER                                                             Plaintiff,

v.

WASP, INC., a Minnesota Corporation,
a/k/a WATKINS AIRCRAFT SUPPORT PRODUCTS, *et al.*           Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the Renewed Motion for Summary Judgment of Defendant Conken Systems, Inc. ("Conken"). (Docket No. 148). Plaintiff Christopher S. Kelter has responded, (Docket No. 153), and Conken has replied, (Docket No. 163). Fully briefed, this matter is ripe for adjudication.[1] The Court having reviewed the parties' submissions and being otherwise sufficiently advised, for the reasons that follow, Conken's Renewed Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART.

### Factual Background

Plaintiff Christopher S. Kelter worked as a package handler at the Paducah, Kentucky, FedEx Ground Package System, Inc. ("FedEx") facility. On April 7, 2011, Kelter worked the "inbound" shift, requiring him to unload packages from tractor trailers and distribute them onto delivery trucks using conveyor belts. At the end of each such shift, a handler checks the machinery to ensure that no packages became stuck along the conveyor belts. (Docket No. 111-1 at 4.) Kelter performed this task on the date at issue; however, the system was not shut down at the time, leaving the conveyor belts operational. Kelter attempted to clear an obstructed package, but tripped and fell while walking across the moving

---

[1] The Court's Amended Scheduling Order, (Docket No. 137), denied with leave to refile Conken's previous Motion for Partial Summary Judgment regarding Kelter's failure to warn claim, (Docket No. 80), and its Motion for Summary Judgment regarding defective design and negligence *per se*, (Docket No. 111). The Court will weigh each of these Motions, along with the accompanying Responses and Replies, throughout the analysis herein.

1

conveyor belt. His arm was pinned between two rollers located near the P-12 hitch area.[2] The resultant traumatic injury ultimately led to the amputation of Kelter's lower right arm.

After Kelter's accident, the Kentucky Labor Cabinet Occupational Safety and Health Program cited FedEx for violating two counts of the Occupational Safety and Health Act. (Docket No. 111-3 at 1.) The first count was eventually dismissed, leaving only a citation for FedEx employees' failure to abide by proper lockout/tagout procedures.[3] (Docket No. 111-4.)

Conken manufactured the machinery at issue, known as a "material handling sortation system." As Conken explains, "This system is a series of conveyors, chutes, and tables used for sorting inbound and outbound packages for delivery to FedEx Ground customers in Paducah and beyond." (Docket No. 111-1 at 1.) Conken was awarded the FedEx contract through a bidding process by which FedEx provided the system's specifications to interested vendors, who then submitted bids for the job. Conken subcontracted with Designed Conveyor Systems, Inc. ("DCS") to create AutoCAD drawings reflecting the FedEx specifications and the Paducah facility's design. Conken forwarded the completed AutoCAD drawings to FedEx, which determined that the proposal satisfied the company's specifications. (Docket No. 111-1 at 2.) Upon FedEx's approval, Conken retained other subcontractors to install the system, design its controls, and provide component parts. (Docket No. 111-1 at 2.)

In this lawsuit, Kelter alleges that various parties, including Conken, were negligent in designing, manufacturing, and installing the FedEx conveyor system. Specifically, he contends that the system was not reasonably safe, as it lacked a safety guard in the P-12 hitch area. Such a safety guard, Kelter reasons, would have averted an amputation or crushing hazard. (Docket No. 24 at 4.) He further contends that Conken and other defendants failed to adequately warn him of the risks and dangers associated with the conveyor belt. Finally, he asserts negligence *per se* and seeks punitive damages. (Docket No. 24 at 5-6.)

---

[2] Conken explains that a hitch is "a conveyor component that allows changes in the slope of a conveyor system. The P-12 hitch changes elevation from a level conveyor to one going 'uphill.'" (Docket No. 111-1 at 4-5.)

[3] Lockout/tagout safety standards require certain industrial machines to be shut down and disconnected from their power source during servicing or repair operations. *See* 29 C.F.R. § 1910.147.

## Legal Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

## Analysis

The Court will first consider the parties' arguments related to Kelter's defective design claim. The Court will then discuss the failure to warn claim and will conclude by analyzing the negligence *per se* allegation.[4]

**I.     Defective design**

Kelter first alleges that Conken was "negligent in the design and manufacture and installation of the Material Handling Sortation System, since [its] product failed to be reasonably safe and specifically have a safety guard." (Docket No. 24 at 4.) Conken responds that because it simply produced the product according to FedEx's specifications, it cannot be liable for a design defect. (Docket No. 111-1 at 10-11.) There can be little doubt that Conken adhered to these specifications and did not participate in the system's design. Indeed, the parties' contract specifically directs that "no changes in engineering concept or final design lay-outs, irrespective of impact on price, shall be made unless [FedEx] has first been notified in writing and agrees in writing to such change." (Docket No. 111-2 at 21.) Accordingly, the Court will consider whether adherence to the buyer's specifications absolves Conken of liability.

In *McCabe Powers Body Co. v. Sharp*, 594 S.W.2d 592 (Ky. 1980), the Kentucky Supreme Court addressed a manufacturer's liability for designing a product in accord with the buyer's specifications. The court opined:

---

[4] Kelter's Second Amended Complaint also asserts a breach of warranty claim:

> The Defendants expressly warranted or impliedly warranted that the package sorting systems and conveyor belts were safe, merchantable and fit for the purpose for which it was manufactured and for sale to the consumer and user, including the Plaintiff, Christopher Kelter. Defendants breached the aforementioned warranties in that the conveyor belt was unsafe without the guard, not of merchantable quality, and was unfit and dangerous for the particular purpose for which it was intended[.]

(Docket No. 24 at 4-5.) The Court will not grant summary judgment on an issue not raised or discussed by the parties and will accordingly limit its analysis to the issues raised in the summary judgment motion.

> [O]rdinarily where a product is manufactured according to plans and specifications furnished by the buyer and the alleged defect is open and obvious, the manufacturer is protected from liability for injuries occasioned by use of the product.
>
> In arriving at this conclusion we recognize that plans and specifications furnished by a buyer could contain design defects so extraordinarily dangerous that a product manufacturer should decline to produce or, if appropriate, issue warnings as to the use of the product.

*Id.* at 195. *McCabe* pointed to the Sixth Circuit's *Garrison v. Rohm & Haas Co.*, 492 F.2d 346, 351 (6th Cir. 1974). *Garrison* declined to hold a manufacturer liable when it designed a product based upon a buyer's specifications, noting that inflicting such liability "would amount to holding a non-designer liable for design defect. Logic forbids any such result." *Id.* at 351.

Although *McCabe* would appear to dispense with Kelter's defective design claims, its holding is not without limits, nor does it provide manufacturers of defective products with a total defense. "Instead, several defects may still result in the imposition of liability on the manufacturer—including those that were not requested by a buyer, those that are concealed, and those that are so extraordinarily dangerous that the manufacturer should have declined to produce the product in accord with a buyer's plans." *Gerhardt v. Cattron-Theimeg, Inc.*, 2013 WL 4736721 at *5. Kelter argues that each of these exclusions applies here. The Court will examine each in turn.

  a. **"Open and obvious"**

As explained above, *McCabe* holds that a manufacturer is not liable for manufacturing a product according to a buyer's specifications only when the alleged defect is open and obvious. The Kentucky Supreme Court specifically declined to discuss a manufacturer's liability when the defect is concealed from a buyer's employees. *McCabe*, 594 S.W.2d at 595. Accordingly, *McCabe's* applicability here hinges upon whether the defect was apparent to the FedEx employees who used the system.

Kelter argues that a genuine issue of material fact exists as to whether the unguarded P-12 hitch was open and obvious. According to Kelter, because the roller on which he was injured was not visible from the conveyor belt, the danger was concealed. He relies upon the testimony of Kevin Parkhurst, who

5

managed the FedEx facility at the time of Kelter's accident. Parkhurst stated that he did not realize that the rollers at the P-12 hitch lacked a guard. (Docket No. 153-2 at 3.) Kelter further points to the comments of Eugene "Trey" Curtain, a FedEx industrial engineer who oversaw the installation of the Paducah facility's sortation system. Curtain stated that the relevant point was viewable from the side, but not the top. (Docket No. 172-1 at 23-26.) Finally, Kelter points to the fact that the P-12 hitch was eight feet from the ground, making it difficult to see.

Conken responds that the gap between the belts of the P-12 hitch was visible from a number of angles, including from at least two platforms near the hitch and from the belt itself. (Docket No. 172-1 at 33.) Moreover, Kelter himself testified that he was walking the system against the direction of the belt at the time of the accident. (Kelter Dep. at 10.) Conken argues that the gap between the rollers at P-12 would have accordingly been visible to him.

In determining whether a danger is open and obvious, the Court must consider whether "both he condition and the risk are apparent to and would be recognized by a reasonable man in the position of the visitor exercising ordinary perception, intelligence, and judgment." *Bonn v. Sears Roebuck & Co.*, 440 S.W.2d 526, 529 (Ky. 1969). Based on the evidence of record, the Court cannot say that the unguarded hitch was obvious as a matter of law. Although further development of the evidence may make clear that that is, in fact, the case, Conken's basis for concluding otherwise remains unclear. Although the company maintains that "[t]here is no question that the danger posed by the P-12 hitch is open and obvious," it points only to Curtain's deposition in support of this conclusion. Conken also contends that "the gap was clearly visible from the nearby work platforms, which are relatively level with the conveyor at that point." (Docket No. 163 at 3-4.) Again, however, Conken offers little support for this conclusion. Because both positions remain plausible given the undeveloped and conclusory nature of the parties' arguments, the Court cannot make a further determination as to the obviousness of the alleged defect.

### b. "Extraordinarily dangerous"

*McCabe* also recognized that some specifications provided by a buyer could contain design defects "so extraordinarily dangerous" that a manufacturer should decline to produce the product according to those plans. Kelter argues that a genuine issue of material fact exists as to whether the alleged design defect in the P-12 hitch was "so extraordinarily dangerous" that Conken should have declined to produce the system without a guard in place. (Docket No. 153 at 12.)

Kelter maintains that "[t]he extraordinarily dangerous nature of conveyor systems is well known throughout the industry." (Docket No. 153 at 12.) He cites the report of Dr. Jeffrey Warren, who opined that Conken should have foreseen that "safeguarding of the hitch in-running nip point should be provided before sale of the conveyor that injured Mr. Kelter." (Docket No. 81-1 at 9.) Kelter further points to an OSHA regulation that requires ingoing nip points to be guarded.[5] Given these circumstances, Kelter contends that a reasonable juror could conclude that Conken should not have sold the conveyor system according to FedEx's specifications.

At this stage, a genuine issue of material fact exists as to whether the alleged defect was so extraordinarily dangerous that Conken should have declined to produce the system without the guard at issue. To be sure, a reasonable juror could determine that the design was not so extraordinarily dangerous—particularly given testimony from Kelter's own expert suggesting that Conken was justified in relying upon FedEx to enforce its own existing safety procedures so as to avoid such accidents.[6] But

---

[5] 29 C.F.R. § 1910.212(a) provides:

> Types of guarding. One or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples of guarding methods are—barrier guards, two-hand tripping devices, electronic safety devices, etc.

[6] Curtain's deposition reads, in relevant part:

> Q. And would you agree with me that you would not expect Chris Kelter or any other package handler to be walking on a moving belt at the Paducah facility or the Yuma facility or the Marion facility, correct?
> A. No.

especially in light of the above determination that the defect was perhaps concealed, the Court cannot say that a reasonable juror could *not* conclude that the system was so extraordinarily dangerous. Because reasonable minds could differ as to whether Conken should have deferred to the FedEx specifications, the issue constitutes a jury question as to Conken's liability.

### c. "Not requested by a buyer"

Finally, Kelter suggests that FedEx did not specifically request that Conken not place a guard on the P-12 hitch. Kelter acknowledges Conken's position that FedEx did not specifically request a guard, but argues that "there is no evidence to the contrary which would support an argument that FedEx specifically requested that a guard *not* be placed on the defective P-12 hitch." (Docket No. 153 at 16 (emphasis added).) Kelter therefore argues that Conken is liable so long as FedEx did not specifically ask Conken to omit a guard.

There is no dispute that FedEx's specifications did not include a guard at the P-12 hitch. (Curtain Dep. at 59-60.) By not specifying the inclusion of a guard, FedEx implicitly expressed that the P-12 hitch should be produced without a guard. Moreover, Curtain testified that he personally inspected the conveyor belts to ensure that the machine aligned with FedEx's specifications for the project, as portrayed in a number of mechanical drawings. (Docket No. 148-1 at 2.) He stated that FedEx instructed subcontractors, including Conken, to manufacture and install the system according to the provided specifications, without alteration.[7] Curtain's testimony makes clear that Conken was not entitled to

---

> Q. That's just something that's not supposed to happen, right?
> A. Right.
> Q. And Conken could also rely on the fact that's not going to happen and FedEx is not going to let that happen?
> A. Yes.

(Curtain Dep. at 53.)

[7] The relevant portion of Curtain's deposition to this point reads as follows:

> Q. "The drawings must conform to the owner's specification, design standards, and drawing standards"?
> A. Yes.

8

modify the specifications that FedEx submitted. Accordingly, the Court cannot accept Kelter's argument that the unguarded hitch did not accord with FedEx's request.

Because genuine issues of material fact persist as to the defect's obviousness and the dangerousness of the specifications, *McCabe* does not shield Conken from liability as a matter of law. Accordingly, Kelter's design defect claim survives. Conken's Motion for Summary Judgment will be denied as to this count.

## II. Failure to Warn

Conken next argues that it is entitled to summary judgment on Plaintiff's claim for negligent failure to warn. To withstand summary judgment, a plaintiff alleging failure to warn must provide evidence that: "(1) Defendants had a duty to warn; (2) the warnings Defendants gave were inadequate; and (3) the inadequate warnings were the proximate cause of the plaintiff's injuries." *Manuel v. Traditional Sporting Goods, Inc.*, 2011 WL 6091710 at *6 (E.D. Ky. Dec. 7, 2011) (citing *Stewart v. Gen. Motors*, 102 Fed. Appx. 961, 964 (6th Cir. June 25, 2004)). Kentucky law provides plaintiffs with two mechanisms by which to pursue a failure to warn claim. First, a manufacturer may be held strictly liable if the plaintiff can demonstrate that the manufacturer failed to warn him of dangers inherent in the product's design, thus rendering that product unreasonably dangerous. *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1149 (6th Cir. 1996) (citing *C & S Fuel, Inc. v. Clark Equip. Co.*, 552 F. Supp. 340, 347 (E.D. Ky. 1982)). Alternatively, a plaintiff can show that the manufacturer negligently failed to warn him of

---

> Q. Other than asking you what it means, and I guess you're going to say, well, it means what it says, but were you expecting Conken to give you a new system in these drawings, or were you expecting them to give you the drawings as they were built according to your specs?
> A. The latter, the drawings per our specs.
> Q. Is it fair to say that you were not wanting anyone at Conken to be creative and give you their better idea with regard to a conveyor system?
> A. Yes.
> Q. You had the system you wanted built, and you wanted them to build that one, correct?
> A. Yes.

(Curtain Dep. at 50-51.)

9

foreseeable risks if it knew or had reason to know that the product was likely dangerous, had no reason to expect that the plaintiff would realize this fact, and failed to exercise reasonable care to alert the plaintiff of this danger. *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1149-50 (6th Cir. 1996).

Kelter initially takes the first approach, arguing that Conken failed to warn him of dangers inherent in the conveyor belt's design—namely, that no guard protected conveyor's nip point. Kelter alleges that no warning specifically noted the unguarded hitch and that the safety meetings failed to address this fact. (Docket No. 87 at 5.) He further contends that Conken failed to warn him of the foreseeable risk that his arm could become trapped in the unguarded hitch. According to Kelter, FedEx employees regularly walked upon the moving conveyor belt in the direct vicinity of supervisors—none of whom attempted to stop this practice. (Docket No. 87 at 6.) Kelter alleges that the designers, manufacturers, and installers of the conveyor belt should have foreseen this use and warned of the unguarded hitch. (Docket No. 87 at 5.)

Kentucky law requires manufacturers "to warn of dangers known to them but not known to persons whose use of the product can reasonably be anticipated." W*atters v. TSR, Inc.*, 904 F.2d 378, 381 (6th Cir. 1990) (citing *Post v. Am. Cleaning Equip. Corp.*, 437 S.W.2d 516). A warning "must be fair and adequate, to the end that the user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse." *Post*, 437 S.W.2d at 520. For example,

> [I]t may be doubted that a sign warning, "Keep off the Grass," could be deemed sufficient to apprise a reasonable person that the grass was infected with deadly snakes. In some circumstances a reasonable man might well risk the penalty of not keeping off the grass although he would hardly be so daring if he knew the real consequences of his failing to observe the warning sign.

*Id.* at 520.

The dangers associated with misusing the conveyor belt, though, were hardly concealed snakes in the grass. To the contrary, Kelter was repeatedly made aware of the potential for serious injury.

Numerous warning labels and stickers affixed to the material sortation system cautioned that the machine's rollers could cause severe injury if users did not abide by appropriate safety procedures. (See Docket Nos. 80-3, 80-4.) The warnings also include graphics clearly illustrating such perils, including one unmistakable representation of a figure losing part of his arm. (Docket No. 80-4.) Moreover, the conveyor belt on which Kelter was walking featured a large stenciled warning reading, "Do not walk on or cross moving belt." (Docket No. 82-1.) These warnings alerted Kelter both to the specific danger at hand and to the consequences potentially befalling noncompliant users.

Moreover, Kelter's employer repeatedly impressed upon him the danger of walking on the moving belt. FedEx conducted multiple safety meetings for its employees, including Kelter, whose signature appears on each of the attendance sheets. The first such meeting, held on July 24, 2010, discussed "severe safety violations" and informed employees that "walking/riding/standing/crossing/laying on a moving conveyor" constituted a "gross safety violation." (Docket No. 80-5.) On September 11, 2010, the meeting focused specifically on conveyor safety, emphasizing the dangers associated with unsafe use of such equipment and encouraging employees to report dangerous conditions, such as missing guards. (Docket No. 80-6.) Seven days later, the safety meeting impressed upon employees that they should "never attempt to get a [package] 'unstuck' from a transition plate while belt is moving." (Docket No. 80-7.) Finally, a February 23, 2011, meeting directed employees never to "cross or walk on moving conveyors." (Docket No. 80-8.)[8]

Kelter's argument that the warning failed to expressly advise him that the nip point was not protected by a guard is of no moment. A manufacturer is, of course, required to deliver a fair and

---

[8] Here, FedEx procedures required that the belt be stopped when employees were atop it, indicating that FedEx was aware of the hazards of mounting the system as it was moving. (*See* Docket No. 66-4, Occupational Safety and Health Administration Report, at 4: "The company has [lockout/tagout] procedures for the belt/jam-clearing operation stating the belt must be e-stopped, however the procedures were not utilized by the employees. Employee interviews revealed they had never e-stopped the machine to perform the belt-clearing operation.") Should the pattern of disregard for this safety instruction prove true, one might conclude that FedEx failed to take the potential for such hazards to heart. But any such shortcomings cannot be attributed to Conken.

adequate warning, but it need not provide "a warning of bewildering particularity." *Jordon v. Massey-Ferguson, Inc.*, 1996 WL 662874 (6th Cir. 1996). That the warning did not recite the specific mechanisms that could ultimately cause injury does not render it legally insufficient. *Anderson v. Ridge Tool Co.*, 2008 WL 1908716 at *10 (E.D. Ky. Apr. 30, 2008).

In addition to these warnings, the record indicates that Kelter had personal knowledge of the prohibition against walking on the powered-on conveyor system. At deposition, Kelter admitted that FedEx management warned him against walking atop the sortation system while it was powered on. (Docket No. 80-9 at 54. ("Were you ever advised by your manager that you should not be walking on the conveyor system while it is turned on?" "At least once, to the best of my knowledge.")) Kelter's expert confirmed that Kelter understood his supervisors' admonition and offered no criticism of Conken—or any other defendants—to support a failure to warn claim. (Warren Dep. at 31-33.)

This acknowledgement, coupled with the numerous warnings affixed to the machine and the FedEx safety meetings, indicate that Kelter was aware of the danger that walking on the moving conveyor belt could cause serious bodily injury. Kentucky law does not require a manufacturer to warn of dangers that are known to the user. *See Demaree v. Toyota Motor Corp.*, 37 F. Supp. 2d 959, 967-69 (W.D. Ky. 1999). Here, no jury could find that Kelter was uninformed as to the risk of injury. Accordingly, Conken's Motion for Summary Judgment should be granted as to Kelter's claim for failure to warn.

### III.     Negligence *Per Se*

Kelter's Second Amended Complaint also asserts a claim of negligence *per se*, referencing both federal and state regulations as defining the applicable standard of care. Kentucky Revised Statute § 446.070 provides: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." "In accord with traditional legal principles related to the common-law concept of negligence per se, the statute applies when the alleged offender violates a statute and the plaintiff comes within the

class of persons intended to be protected by the statute." *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011).

After Kelter's accident, the Kentucky Labor Cabinet Occupational Safety and Health Program cited FedEx for violating two counts of the Occupational Safety and Health Act. The citation's first count pointed to employees' failure to abide by "lockout/tagout procedures developed for the belt/jam clearing operation . . . exposing employees to crushing/amputation hazards." (Docket No. 111-3 at 1.) FedEx was also cited for leaving unguarded the ingoing nip point on the rollers in the conveyor system's P-12 area. (Docket No. 111-3 at 1.)

However, "Kentucky courts have held that the 'any statute' language in KRS 446.070 is limited to Kentucky statutes and does not extend to federal statutes and regulations." *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. Ct. App. 2008) (citing *T & M Jewelry, Inc. v. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006)). "The Kentucky General Assembly did not intend for KRS 446.070 to embrace the whole of federal laws and the laws of other states and thereby confer a private civil remedy for such a vast array of violations." *Hicks*, 189 S.W.3d at 530. Accordingly, to the extent that Kelter's negligence *per se* claims are premised on federal law, they must be dismissed.

As to the portion of his argument that is grounded in Kentucky law, Kelter argues that Conken's failure to install a guard violated relevant state regulations and that he fell within the foreseeable class of individuals placed in unreasonable danger by this fact. (Docket No. 24 at 5.) Kelter relies upon the OSHA citation's second count, which alleges violation of 803 KAR 2:314(2):

> Types of guarding. One or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples of guarding methods are—barrier guards, two-hand tripping devices, electronic safety devices, etc.

Kelter's argument, however, is without merit, as the state inspector withdrew the citation for failure to guard the nip point. (Docket No. 111-4.) Because the OSHA investigator determined that the absence of a guard was not an OSHA violation, this withdrawn citation cannot serve as the basis of a negligence *per se* claim. Accordingly, Conken is entitled to summary judgment as to this claim.

**CONCLUSION AND ORDER**

Therefore, having considered the parties' arguments and being otherwise sufficiently advised, for the foregoing reasons,

IT IS HEREBY ORDERED that Defendant Conken Systems, Inc.'s Motion for Summary Judgment, (Docket No. 148), is GRANTED IN PART and DENIED IN PART.

a. Conken's Motion for Summary Judgment on Kelter's failure to warn and negligence *per se* claims is GRANTED.

b. Conken's Motion for Summary Judgment on Kelter's design defect claim is DENIED.

IT IS SO ORDERED.