UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00053

CHRISTOPHER S. KELTER                                                                        Plaintiff,

v.

WASP, INC., a Minnesota Corporation,
a/k/a WATKINS AIRCRAFT SUPPORT PRODUCTS, *et al.*                    Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court upon the Motion for Summary Judgment of GEMS Conveyor Installations, Inc. ("GEMS") (Docket No. 146.) Conken Systems, Inc. ("Conken") has responded, (Docket No. 151), and GEMS has replied, (Docket No. 161). Fully briefed, this matter is ripe for adjudication. For the reasons explained below, GEMS' Motion will be GRANTED.

**Factual Background**

As the Court has recited in its previous Opinions regarding this case, Plaintiff Christopher S. Kelter suffered a traumatic amputation of his lower right arm while operating the conveyor belt system at the FedEx Ground Package System, Inc. ("FedEx") facility in Paducah, Kentucky. Kelter's arm became pinned between two rollers near the P-12 hitch area of the Material Handling Sortation System ("the System"), the facility's conveyor belt system.[1] In this lawsuit, Kelter contends that a number of Defendants should be liable for the system's allegedly defective design, manufacture, and installation.

Conken was awarded the contract to construct the System for FedEx after a competitive bidding process. FedEx provided Conken with the System's design and the job specifications. Conken, in turn,

---

[1] A hitch is "a conveyor component that allows changes in the slope of a conveyor system. The P-12 hitch changes elevation from a level conveyor to one going 'uphill.'" (Docket No. 111-1 at 4-5.)

1

subcontracted with a Designed Conveyor Systems, Inc. ("DCS") to create AutoCAD drawings reflecting the FedEx specifications and the Paducah facility's design. Conken also subcontracted with GEMS to install the component parts, although no written contract memorialized this agreement. (Docket No. 146-1 at 2.) On November 14, 2013, the Court granted summary judgment in favor of GEMS on Kelter's claims, as well as upon the claim for contribution asserted by Conken. (Docket Nos. 90 and 91.)

Now before the Court is Conken's crossclaim seeking indemnity from GEMS. Conken claims that it is entitled to both indemnity and contribution from GEMS should it be found liable for any damages to Kelter. (*See* Docket No. 48.)

**Legal Standard**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys.*

*Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

**Analysis**

Indemnity "is simply the repayment to one party by another party who caused the loss, of such amounts the first party was compelled to pay." *Liberty Mut. Ins. Co. v. Louisville & Nashville R.R. Co.*, 455 S.W.2d 537, 541 (Ky. 1970). Unlike the statutory creations of apportionment and contribution, the right to indemnity is born of the common law and "is available to one exposed to liability because of the wrongful act of another with whom he/she is not *in pari delicto*." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). "Under Kentucky law, cases permitting recovery based on indemnity principles 'are exceptions to the general rule, and are based on principles of equity.'" *Hengel v. Buffalo Wild Wings, Inc.*, 2013 WL 3973167 at *2 (E.D. Ky. July 31, 2013) (quoting *Hall v. MLS Nat. Med. Evaluations, Inc.*, 2007 WL 1385943, at *3 (E.D. Ky. May 8, 2007) (internal quotation marks and citations omitted)).

The "indemnity exception" applies in two classes of cases:

> (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

*Degener*, 27 S.W.3d at 780 (quoting *Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 77 S.W.2d 36, 39 (Ky. 1934)).

*Brown Hotel Co. v. Pittsburgh Fuel Co.*, 224 S.W. 2d 165 (1949), provides a classic example of one defendant being entitled to indemnity from another because the first was not *in pari delcito* with the negligence alleged. When a fuel company employee left a manhole lid loose on the hotel's premises, causing injury to a pedestrian. Although the trial verdict specified that the hotel and the fuel company

should each pay half of the judgment, Kentucky's highest court ultimately granted indemnity to the hotel. *Id.* at 165.

*Brown* reasoned that the fuel company employee's failure to securely cover the manhole served as the "primary, efficient and direct cause of the accident"—the "positive antecedent" that exposed the hotel to liability. *Id.* at 167. "Both were in fault but not the same fault toward the party injured. The employees of the two companies were not acting jointly or concurrently or contributory in committing the tort. They were not in pari delicto." *Id*. *Brown* articulated the governing principle of the indemnity doctrine:

> Where one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is, nevertheless, thereby exposed to liability to the person injured, or was only technically or constructively at fault, as from the failure to perform some legal duty of inspect and remedying the hazard, the party who was the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained.

*Id.*

GEMS first asserts that Conken cannot prove that GEMS was at fault. According to GEMS, any failure to guard the hitch that allegedly caused Kelter's injury resulted not from an installation problem, but from a design defect for which GEMS had no responsibility. (Docket No. 146-1 at 12.) GEMS alleges that no evidence indicates that it participated at all in the System's design or that it failed to install the System according to the relevant specifications. In support of this claim, GEMS points to the testimony of Trey Curtain, the FedEx Project Engineer for the Paducah facility. Curtain testified that FedEx instructed subcontractors to install the system according to the provided specifications, without alteration. (Docket No. 172-1, Curtain Dep., at 22:3-13; 50:16-25, 51:11.) Moreover, it is undisputed that the specifications and drawings provided to GEMS did not call for a guard to be placed at the System's P-12 hitch. Accordingly, GEMS argues that no record evidence shows that it had control over the design or was obligated to review the designs provided to it. Simply put, "no one has ever claimed

4

that GEMS should have discovered a design problem." (Docket No. 146-1 at 15.) Instead, GEMS merely installed the hitch as it was designed.

Conken does not dispute this characterization. Instead, Conken generally points to the testimony of Kelter's expert, Dr. Jeffrey H. Warren, who posits that GEMS negligently installed the system. (Docket No. 176-9, Warren Dep., 61:24-62:1 ("[GEMS] installed the system. It's my opinion that this installation was improper because it didn't' have a guard on it."); 63:16-17 ("[T]here is an installation problem if there was no guard installed.")) Conken argues that should a jury accept this conclusion and hold Conken responsible, Conken would be entitled to indemnification from GEMS. (Docket No. 151 at 5-6.)

However, no evidence indicates that GEMS shared in the alleged fault. Warren further testified that no evidence indicated that GEMS failed to abide by the design provided to it. (Docket No. 176-9, Warren Dep., 62:21-25.) Moreover, even if GEMS should have discovered the purported design flaw, its liability would nonetheless be secondary to that of the parties responsible for the System's design. As explained above, Kelter's claim centers upon an allegedly flawed design. The record evidence indicates that FedEx maintained control of the design, and FedEx, Conken, and DCS produced the drawings. GEMS points to certain evidence that suggests that Conken may have shared in control over the hitch's design, including drawings bearing Conken's mark, (*see* Docket No 172-1 at 35:16-20), and Conken Owner Tom Conneff's testimony that FedEx instructed Conken to "come up with some type of a guard for the hitches" following Kelter's accident. (Docket No. 161 at 2 (citing Conneff Dep. at 81:21-25.))

Should Conken be determined to share the fault for allegedly defective design, GEMS would not share Conken's level of culpability. This conclusion is supported by *Ohio River Pipeline Corp. v. Landrum*, 580 S.W.2d 713 (Ky. Ct. App. 1979), wherein the Kentucky Court of Appeals Confronted the issue of actual knowledge of a wrongful act in the context of an indemnity claim. The *Landrum* facts concerned the right to indemnity between a contractor and landowner when the contractor trespassed onto

land owned by another. The court held that if both parties carry on despite having actual knowledge that their acts are wrongful, they are *in pari delicto*, and neither is entitled to indemnity. *Id.* at 121. The commission of a wrongful act with actual knowledge "does not consist of passive or secondary negligence *such as the failure to discover the wrong of another*," but is instead active and primary itself. *Id.* (emphasis added).

Based on *Landrum*, any failure by GEMS to discover an alleged design flaw produced by other Defendants constitutes "passive" and "secondary knowledge." *Id.* at 121; s*ee Degener v. Hall Contracting Corp.*, 27 S.W. 775, 777 (Ky. 2000) (distinguishing between active wrongdoers and those whose "liability is premised solely upon [their] failure to prevent" others from doing harm). Indeed, as GEMS notes, no evidence suggests that GEMS, the System's installer, had the occupational safety and engineering qualifications to make such a determination. Accordingly, because Conken cannot establish that GEMS' conduct was the "primary and efficient cause" of Kelter's injury, it is not entitled to indemnity. *Degener*, 27 S.W.3d at 780 (quoting *Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 77 S.W.2d 36, 39 (Ky. 1934)). Even assuming that GEMS should have discovered the design flaw, this fault would be secondary to that of the parties who created the design.

Finally, the Court notes that if Conken's stated position is accepted as true—that is, that Conken had no control over the System's design—but the company is nonetheless deemed at fault, Conken's fault would be the same as that of GEMS: that is, that both parties erroneously relied upon faulty specifications. Therefore, the two companies would be *in pari delicto*, having committed the same alleged oversight. This shared error would render indemnity inapplicable. *See Degener*, 27 S.W.

These reasons compel the Court to grant GEMS' Motion for Summary Judgment. Even when considered in the light most favorable to Conken, the evidence of record reveals no basis for an indemnity claim. Instead, the Court anticipates that the jury will be directed to apportion liability in proportion to

the fault of each defendant. Should Conken's argument convince the jury, it will be liable for its only negligence, if any—not that of GEMS.

Accordingly, GEMS' Motion for Summary Judgment, (Docket No. 146), will be GRANTED. An appropriate Order will issue concurrently with this Opinion.

*Thomas B. Russell*
Thomas B. Russell, Senior Judge
United States District Court

September 24, 2014