UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00053-TBR

CHRISTOPHER S. KELTER                                                                                           Plaintiff,

v.

CONKEN SYSTEMS, INC., *et al.*                                                                              Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon two motions in limine filed by various defendants. First, Defendant Conken Systems, Inc. ("Conken") filed a motion in limine regarding subsequent remedial measures, (Docket No. 192), to which Plaintiff Christopher Kelter responded, (Docket No. 194). Defendant FedEx Ground Package System, Inc. ("FedEx") joined Conken's motion. (Docket No. 202). FedEx also filed its own motion seeking to limit the scope of Kelter's claims for damages. (Docket No. 196.) Kelter responded, (Docket No. 200), and FedEx replied, (Docket No. 205).

Fully briefed, each of these matters is now ripe for consideration. For the reasons set forth below, the Court will GRANT Conken's motion and will GRANT IN PART and DENY IN PART FedEx's motion.

### Factual Background

As the Court has recited in its previous opinions regarding this case, Plaintiff Christopher S. Kelter worked as a package handler at the Paducah, Kentucky, FedEx facility. On April 7, 2011, Kelter worked the "inbound" shift, requiring him to unload packages from tractor trailers and distribute them onto delivery trucks using conveyor belts. At the end of each such shift, a

handler checks the machinery to ensure that no packages became stuck along the conveyor belts. (Docket No. 111-1 at 4.)  Kelter performed this task on the date at issue; however, the system was not shut down at the time, leaving the conveyor belts operational.  Kelter attempted to clear an obstructed package, but tripped and fell while walking across the moving conveyor belt.  His arm` was pinned between two rollers located near the P-12 hitch area.  The resultant traumatic injury ultimately led to the amputation of Kelter's lower right arm.

In this lawsuit, Kelter contends that a number of Defendants, including Conken and FedEx, should be liable for the system's allegedly defective design, manufacture, and installation.  Conken manufactured the machinery at issue, known as a "material handling sortation system."  As Conken explains, "This system is a series of conveyors, chutes, and tables used for sorting inbound and outbound packages for delivery to FedEx Ground customers in Paducah and beyond."  (Docket No. 111-1 at 1.)  Conken was awarded the FedEx contract through a bidding process by which FedEx provided the system's specifications to interested vendors, who then submitted bids for the job.  Conken subcontracted with Designed Conveyor Systems, Inc. to create AutoCAD drawings reflecting the FedEx specifications and the Paducah facility's design.  Conken forwarded the completed AutoCAD drawings to FedEx, which determined that the proposal satisfied the company's specifications. (Docket No. 111-1 at 2.) Upon FedEx's approval, Conken retained other subcontractors to install the system, design its controls, and provide component parts. (Docket No. 111-1 at 2.)

## Analysis

### I.     Conken's Motion Regarding Subsequent Remedial Measures

Kelter's arm was entrapped at the system's P-12 hitch, which was partially dissembled to release him from it.  Upon its reassembly, FedEx's maintenance contractor, ServiceMax

Corporation ("ServiceMax"), installed a polymer guard. The newly added guard was on display when the parties conducted an on-site inspection of the system and photographed the P-12 hitch in its guarded state.[1] Conken argues that introduction of these photographs and other evidence showing the newly guarded hitch would be prejudicial and should be excluded.

To be sure, the addition of the hitch satisfies the federal rules' expansive definition of relevance. Fed. R. Evid. 401. Rule 401 deems evidence to be relevant so long as it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Significant issues hinge upon whether the unguarded hitch created an unreasonably hazardous condition. Of course, that the hitch was later guarded is only circumstantial evidence that it was unsafe, and a factfinder may find the inference a dubitable one. *See Keller v. United States*, 38 F.3d 16, 31 (1st Cir. 1994) (noting that "[a]t best, subsequent remedial measures are considered marginally probative of prior negligence."). Nonetheless, the Court will leave degree of its probative value, if any, to the factfinder to decide.

This finding of relevance is not dispositive, however. Federal Rule of Evidence 407 precludes the use of subsequent remedial measures to prove negligence, culpable conduct, or a defect in a product or its design. Such measures are admissible, though, to show "another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." The Rule is grounded upon "a policy of encouraging people to take, or at least not discourage them from taking, steps in furtherance of added safety." Advisory Committee Note to Rule 407. In other words, the Rule permits parties to enhance the safety of

---

[1] The parties indicate that a second inspection is planned, during which FedEx maintenance contractors will temporarily remove the guard and the parties will take photographs of the hitch in its unguarded state, as it existed at the time of Kelter's injury. (*See* Docket No. 192.)

their products free from fear that doing so will expose them to liability for the product's original form.

Kelter responds that the Court need not bar evidence of subsequent remedial measures in this case, as the remedial measures were taken by a non-party to this lawsuit. (Docket No. 194.) Kelter attributes the remedial actions at issue to ServiceMax, identified as FedEx's "service provider." (Docket No. 194-2, Kevin Parkhurst Dep., at 44:1-3.) ServiceMax, not Conken, installed the guard; accordingly, ServiceMax is not subject to this litigation and would not have been influenced by fear of liability. Conken therefore reasons that excluding the remedial measures would not further Rule 407's essential goal of encouraging heightened safety mechanisms.

Kelter correctly states that although no Sixth Circuit precedent provides guidance regarding Rule 407 in this context, "every other Court of Appeals that has considered the issue has held that Rule 407 does not require the exclusion of subsequent remedial measures taken by a non-defendant." *Bowling v. Scott County, Tenn.*, 2006 WL 2336333 (E.D. Tenn. Aug. 10, 2006) (collecting cases from the Third, Tenth, Fourth, First, Ninth, Eighth, Fifth, and Seventh Circuits). "'The logic for this exception to Rule 407 is that a nondefendant will not be inhibited from taking remedial measures if those measures are used against a defendant.'" *Id.* (quoting 2 Joseph M. McLaughlin, Jack B. Weinstein, & Margaret A. Berger, *Weinstein's Federal Evidence* § 407.05[2] (2d ed. 2006)); *see also Diehl v. Blaw-Knox*, 360 F.3d 426, 340(3d Cir. 2004) ("The admission of remedial measure by a non-party necessarily will not expose that non-party to liability, and therefore will not discourage the non-party from taking the remedial measures in the first place."). Were Conken the only defendant at issue, then, the Court would be inclined to deny the company's request to exclude this evidence.

4

Conken's interests, though, are not the only ones at stake. FedEx, a third-party defendant, joined Conken's motion. (*See* Docket No. 202.) Unfortunately, none of the three parties involved in this motion elaborate upon the contractual relationship between ServiceMax and FedEx, leaving the Court to speculate as to the nature of this relationship. The Court assumes that ServiceMax, likely an independent contractor, affixed the polymer guard at FedEx's request. Although neither party has pointed to evidence as to how this came about, one strains to imagine a scenario in which ServiceMax would have independently learned of Kelter's accident, determined it best to correct any potential hazards, and appeared at the facility to do so without FedEx's input. The Court agrees with Kelter that ServiceMax apparently installed the hitch—but this was likely done upon notice, if not instruction, from FedEx. Therefore, because ServiceMax's actions are attributable to FedEx, the policy motivating Rule 407 applies here.

Further analysis only strengthens this conclusion. In considering the admissibility of subsequent remedial measures, the Court must examine the purpose of such evidence: "In order for the evidence to be admissible, Rule 407 requires that feasibility be contested." *Bauman v. Volkswagenwerk Aktiengesellschaft*, 621 F.2d 230, 233 (6th Cir. 1980) (citing *Knight v. Otis Elevator Co.*, 596 F.2d 84 (3d Cir. 1979)). What is more, "[e]vidence of subsequent design changes has marginal relevance as to whether a product was defective at a previous time, particularly when a defendant does not contest the feasibility of the change." *Bush v. Michelin Tire Corp.*, 963 F. Supp. 1436, 1450 (W.D. Ky. 1996). In light of the often "extremely damaging" nature of such evidence, the Sixth Circuit instructs that "in a close case, even if feasibility is controverted, a limiting instruction excluding jury consideration on the issue of negligence [may be] necessary to prevent prejudice." *Id.* Here, Kelter has not contested the feasibility of including a guard at the P-12 hitch, causing the Court to favor excluding this

evidence. For these reasons, the Court determines that introduction of subsequent remedial measures in this case should be prohibited. To the extent that Kelter discovers more specific information suggesting otherwise, he may raise this objection at trial.

## II. FedEx's Motion Concerning the Scope of Damages

The Court next turns to FedEx's motion in limine concerning the scope of alleged damages that Kelter may recover. FedEx cautions the Court against allowing double recovery: it argues that Kelter's claims for medical expenses and lost wages have been extinguished to the extent that they are paid or payable by the parties' settlement agreement. Consequently, FedEx reasons, the Court must not admit evidence regarding such claims.

FedEx's involvement in this lawsuit comes by virtue of an indemnity claim filed by Conken. FedEx asserts that the record evidence would indicate that Conken, the primary tortfeasor, did not cause Kelter's injury; FedEx has accordingly withdrawn its claim against Conken and has acquired subrogation rights. Pursuant to the contract between the companies, should the fact-finder attribute any liability for Kelter's injuries to Conken, Conken will in turn pursue indemnity from FedEx.[2]

---

[2] In the contract concerning the construction of the material sortation system, Conken and FedEx agreed to indemnify each other under certain conditions, including the following:

> 19. General Indemnities
>
> . . . .
>
> B.      Buyer [FedEx] shall indemnify, defend and hold harmless Seller [Conken], its agents and employees, from any and all third party claims, suits, losses, and expenses, including reasonable attorney's fees, provided that any such claim, suit, loss, or expense is attributable to bodily injury, sickness, disease or death, or injury to property (excluding loss thereof), which is caused in whole or in part by: (a) material modifications to the System or any portion thereof by Buyer, its officers, agents, employees, contractors or assigns; or (b)

In its motion, FedEx, which is self-insured for workers' compensation claims, contends that it has paid all of Kelter's reasonable and necessary medical claims related to the accident and will continue to do so. The parties' workers' compensation compels this result, as does Kentucky law. *See* Ky. Rev. Stat. 342.020 (providing in part that "the employer shall pay for the cure and relief from the effects of an injury or occupational disease the medical, surgical, and hospital treatment . . . as may be required for the cure and treatment of an occupational disease."). FedEx, which is self-insured for workers' compensation claims, settled all of Kelter's claims for past and future total disability medical expenses, as well as lost wages. In total, FedEx paid $200,000 to settle Kelter's claims concerning past and future income benefits, a right to reopen, and a right to seek vocational rehabilitation benefits. However, Kelter retained his right to reasonable and necessary medical benefits, which FedEx will continue to cover as they are processed through the workers' compensation system. (*See* Docket No. 196-2, Agreement as to Compensation and Order Approving Settlement.)

In *Krahwinkel v. Commonwealth Aluminum Corp.*, 183 S.W.3d 154 (Ky. 2005), the Kentucky Supreme Court explained that the Commonwealth's workers' compensation law precludes a civil plaintiff from recovering from a tortfeasor the same elements of damages for

---

the material improper use or operation of the Work or any portion thereof by Buyer, its officers, agents, employees, servants, contractors or assigns.

C. Buyer agrees to abide by the instructions contained in operation and maintenance manuals, safety literature and training classes furnished under Seller's Proposal and that it will not tolerate any operation that is contrary to these instructions. If the Buyer observes equipment that presents a hazard it will promptly inform Seller so an acceptable solution can be achieved.

(*See* Docket No. 196-1 at 3.)

which he has already been compensated via workers' compensation benefits. The court looked to Ky. Rev. Stat. 342.700(1), which provides, in relevant part:

> Whenever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed against the employer for compensation and the other person to recover damages, *but he shall not collect from both.*

(emphasis added). *Krahwinkel* noted the distinct rights of the injured employee and of the employer/insurer when a third party's negligence caused the employee's injuries. "The employer/insurer 'owns' a subrogation right to the amount of compensation it paid to the injured employee, and the employee 'owns' the right to any other damages for which the third-party tortfeasor is legally liable." *Krahwinkel*, 183 S.W.3d at 158. Given Kentucky's long-standing principle forbidding double recovery, the statute precludes the employee from recovering from both the workers' compensation carrier and a third-party tortfeasor—regardless of whether the employer actually pursues its subrogation right. *Id.*; *see also Williams v. Brown*, 265 S.W. 480, 481 (1924) ("The one thing certain from a reading of this section of the statute above quoted is that the injured employee cannot have full compensation and collect money on a judgment for full damages for the same injury. That would be double compensation.").

Kelter responds that FedEx effectively seeks to extinguish "a portion of an entire prima facie element" of his claim by precluding evidence of medical expenses and lost income. Kelter reasons that precluding such evidence would render proper apportionment impossible. (Docket No. 200 at 2-3.) The Court cannot agree. Pursuant to comparative fault principles, the Court anticipates instructing the jury to allocate fault among not only Kelter and Conken, but also FedEx, a settling-nonparty. Put simply, the Worker's Compensation Act has no effect upon the

apportionment of damages. As addressed in the compensation settlement, Kelter has been compensated for certain damages and has been afforded the right to recover future medical expenses from FedEx. FedEx now owns a subrogation right for these amounts. *See Krahwinkel*, 183 S.W.3d at 158. The applicable case law makes clear Kelter's inability to recover in this action any amounts that have been recovered in the workers' compensation settlement; to permit otherwise would be to allow double recovery, an outcome that Kentucky law will not tolerate. The Court therefore agrees that Kelter may only recover for injuries beyond those for which he has already been compensated by FedEx, the workers' compensation carrier for this incident. As indicated in the compensation settlement, these amounts include past or future income losses and past medical expenses.

However, the Court agrees with Kelter that evidence of future medical expenses may be recoverable in the instant action. Although the settlement gives Kelter a right to payment of future medical expenses resulting from the incident, Kentucky courts have determined that such expenses are not necessarily duplicative of those received under a civil judgment. Only when they are "actually incurred and determined to be payable under the workers' compensation law" do such expenses become duplicative. *Cantrell Supply Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 386 (Ky. App. 2002) ("The judgment award for future medical expenses is not necessarily coextensive with the right to payment of future medical expenses under the workers' compensation law."). Here, the damages have not yet been incurred and are not yet payable under the workers' compensation scheme. Because they are not duplicative, the Court will not preclude evidence of such damages at this phase.

**Conclusion and Order**

The Court having considered the parties' arguments and being otherwise sufficiently advised, for the reasons set forth above, the Court hereby GRANTS Conken's motion, (Docket No. 192), and will GRANTS IN PART and DENIES IN PART FedEx's motion, (Docket No. 196).